FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| In re READ-RITE CORP. SECURITIES LITIGATION | |
| JAMES C. NEVIUS; WILLIAM MOLAIR, on behalf of themselves and all others similarly situated,<br>   *Plaintiffs-Appellants,*<br>v.<br>READ-RITE CORP.; CYRIL J. YANSOUNI; FRED SCHWETTMANN, DR.; LORI HOLLAND; PETER G. BISCHOFF; H. VAUGHAN BLAXTER, III; REX S. JACKSON; MICHAEL A. KLYSZEIKO; SHERRY F. MCVICAR,<br>   *Defendants-Appellees.* | No. 00-17098<br>D.C. No.<br>CV-98-20434-JF<br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Jeremy Fogel, District Judge, Presiding

Argued and Submitted
December 5, 2002—San Francisco, California

Filed July 3, 2003

Before: Melvin Brunetti and A. Wallace Tashima,
Circuit Judges, and David Alan Ezra,* District Judge.

*The Honorable David Alan Ezra, Chief United States District Judge for the District of Hawaii, sitting by designation.

9008    IN RE READ-RITE CORP.

Opinion by Judge Ezra

## COUNSEL

Solomon B. Sera, San Francisco, California, for plaintiffs-appellants James C. Nevius, et al.

Sherrie R. Savett, Stuart J. Guber, Phyllis M. Parker, Philadelphia, Pennsylvania, for plaintiffs-appellants James C. Nevius, et al.

Boris Feldman, Jared L. Kopel, Cheryl W. Foung, Gregory L. Watts, Palo Alto, California, for the defendants-appellees.

## OPINION

EZRA, District Judge:

Plaintiffs, owners of Read-Rite Corporation ("Read-Rite") common stock between March 2, 1996, and June 19, 1996 (the "Class Period"), appeal the district court's dismissal of their securities class action for failure to state a claim pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4 (2002). Plaintiffs contend that the district court improperly concluded that they did not allege scienter with the particularity required by the PSLRA. We affirm.

### I. BACKGROUND

Plaintiffs initiated their lawsuit against Read-Rite, its Chairman and CEO Cyril J. Yansouni, and Read-Rite COO and Director Frederic Schwettmann (collectively, "Defendants"). Read-Rite manufactured and sold ferrite metal-in-gap ("MIG") recording heads and Tripad thin film inductive recording heads for hard-disk drives. In late 1994 and early 1995, Read-Rite reported growing revenues and profits.

By 1995, four customers purchased 90 percent of Read-Rite's product. Western Digital represented 37 percent of Read-Rite's sales, making it Read-Rite's largest customer. Conner Peripherals ("Conner") represented another 13 percent of Read-Rite's sales. In late September 1995, Seagate Technology ("Seagate") announced its planned acquisition of Conner. The extent to which Conner remained a primary customer was of material concern to Read-Rite's investors. As a result of Seagate's acquisition, as well as other alleged pressures, Plaintiffs allege that Defendants made several fraudulent

In re Read-Rite Corp.    9013

statements during the Class Period regarding the status of product development and the demand for Read-Rite's products. Specifically, Plaintiffs allege that Defendants made the following false statements:

1. In an interview with *Barron's*, published in the March 4, 1996 issue (disseminated on March 2, 1996), Defendant Yansouni stated: "I can't prove that Seagate will continue to buy our products. But we're being designed into some Conner products right now that survived Seagate's rationalization of its product line after the merger. If we execute, we'll continue to have business with Seagate."

2. On April 17, 1996, Read-Rite issued a press release in which Defendant Yansouni stated: "We enter the third quarter of fiscal 1996 having achieved design-ins for a number of new products using our advanced inductive Tripad heads."

3. On April 18, 1996, as reported in a Solomon Brothers analyst report, the Company stated during a conference call with investment professionals: (a) demand for Read-Rite products "continues to be good"; (b) Read-Rite has completed its transition to its Tripad II product and was at that time ramping up to high volume production of those products; and (c) Read-Rite had completed its development of its 850 MB Tripad III recording head, was in the final testing phase for this product, and expected to ramp up production of this product in the quarter ending June 30, 1996.

4. On May 20, 1996, "Read-Rite made a presentation at the Smith Barney Technology Confer-

ence in which the Company stated that it was in final qualification trials for Tripad III."

## II. STANDARD OF REVIEW

"Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991). Thus, "leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." *United States v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001). "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1097-98 (9th Cir. 2002).

## III. DISCUSSION

[1] This case provides us with yet another opportunity to visit § 10(b) of the Securities Exchange Act of 1934 (the " '34 Act"), which provides that it is unlawful "to use or employ in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance . . . ." 15 U.S.C. § 78j(b) (2002). Scienter is an essential element of a §10(b) claim. *Lipton v. PathoGenesis Corp.*, 284 F.3d 1027, 1035 n. 15 (9th Cir. 2002).

[2] The PSLRA imposes a heightened pleading standard for alleging violations under the '34 Act. *See* 15 U.S.C. § 78u-4 (2002). Under the PSLRA:

> In any private action arising under this chapter in which the plaintiff alleges that the defendant—
>
> > (A) made an untrue statement of a material fact; or

IN RE READ-RITE CORP. 9015

(B) omitted to state a material fact necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading;

the complaint shall *specify each statement alleged to have been misleading*, the *reason or reasons why the statement is misleading*, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall *state with particularity all facts* on which that belief is formed.

15 U.S.C. § 78u-4(b)(1) (2002) (emphasis added). Additionally, with regard to pleading scienter, the PSLRA provides:

In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, *state with particularity facts* giving rise to a *strong inference* that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b)(2) (2002) (emphasis added). If the complaint fails to meet the above-quoted requirements, the court must dismiss the complaint. 15 U.S.C. § 78u-4(b)(3)(A) (2002).

We incorporate the dual pleading requirements of §§ 78u-4(b)(1) and (b)(2) into a single inquiry, because falsity and scienter are generally inferred from the same set of facts. *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001). Thus, "[i]n considering whether a private securities fraud complaint can survive dismissal under Rule 12(b)(6), we must determine whether particular facts in the complaint, taken as a whole, raise a strong inference that defendants intentionally or [with] deliberate recklessness made false or misleading statements to

| 9016 | IN RE READ-RITE CORP. |
|---|---|

investors." *Id.* (internal quotation marks omitted). The requirement to "plead all the 'facts' with particularity" means that "a plaintiff must provide a list of all relevant circumstances in great detail." *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 984 (9th Cir. 1999). "To meet this pleading requirement, the complaint must contain allegations of specific 'contemporaneous statements or conditions' that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." *Ronconi*, 253 F.3d at 432. Thus, if a plaintiff's "pleadings are not sufficiently particularized or where, taken as a whole, they do not raise a 'strong inference' that misleading statements were knowingly or deliberate recklessness made to investors, a private securities fraud complaint is properly dismissed under Rule 12(b)(6)." *Id.* at 429.

[3] Here, the district court concluded that Plaintiffs had failed to "provide specific allegations of . . . contemporaneous information in order to satisfy the Reform Act standard." Plaintiffs challenge the district court's holding, relying on post-class period admissions, which allegedly indicate Defendants' "contemporaneous knowledge about these subjects during the Class Period when they made the false and misleading statements." A later statement may suggest that a defendant had contemporaneous knowledge of the falsity of his statement, if the later statement directly contradicts or is inconsistent with the earlier statement. *Yourish v. Cal. Amplifier*, 191 F.3d 983, 996-97 (9th Cir. 1999). However, "[i]t is clearly insufficient for plaintiffs to say that a later, sobering revelation makes an earlier, cheerier statement a falsehood." *Id.* at 997.

Plaintiffs rely upon post-class-period "admissions" by Defendants to establish a "strong inference" that Defendants knowingly, or with deliberate recklessness, made misleading statements to investors. First, Plaintiffs argue that Defendants had contemporaneous knowledge of the falsity of their statements when they admitted on Read-Rite's form 10K for fiscal

year 1996, filed with the Securities and Exchange Commission, that they had learned prior to March 30, 1996, that Read-Rite needed "to develop the new 'undershoot reduction' feature to participate in the Western Digital programs." Plaintiffs argue that this statement is proof of the falsity of Defendants' class-period statements regarding the status of the development of Read-Rite's Tripad II and Tripad III recording heads.

[4] These statements, however, do not specifically address Western Digital's need for the "undershoot reduction" feature. Instead, Defendants' class-period statements only generally reference the development of the Tripad products. Defendants' post-class-period statement that Read-Rite had not yet started development of "undershoot reduction" is therefore not inconsistent with Defendants' general class-period statements. *See id.* at 996-97. Accordingly, the post-class-period statement in the form 10K does not demonstrate the "intentional or deliberately reckless false or misleading nature" of the allegedly false statements made in April 1996. *See Ronconi*, 253 F.3d at 432.

[5] Second, Plaintiffs argue that Defendant Yansouni's post-class-period admission that he personally rejected a Western Digital request for a capacity-expanding feature indicates that Defendants had contemporaneous knowledge about allegedly false and misleading statements made during the Class Period regarding anticipated business from Western Digital. Plaintiffs did not plead, however, when Western Digital asked for the capacity-expanding feature, nor did Plaintiffs indicate when Yansouni rejected Western Digital's request. Moreover, Plaintiffs did not plead that Defendants had to meet a deadline to produce the capacity-expanding feature or that Defendants knew that they would not be able to meet such a deadline. Accordingly, Yansouni's post-class-period admission was not inconsistent with Defendants' class-period statements. We therefore hold that the district court correctly concluded that "the complaint contains no factually particular

9018            IN RE READ-RITE CORP.

allegations which strongly imply Defendant's *contemporaneous* knowledge that the statement was false when made."

[6] Third, Plaintiffs argue that Defendants had contemporaneous knowledge of the falsity of their March 2, 1996, statement based upon their admission that, consistent with its earlier expectations, Conner was unlikely to be a customer after September 30, 1996. Again, we conclude that this post-class-period statement does not make actionable the class-period statement about Conner's demand for Read-Rite's products because the post-class-period statement does not raise a "strong inference" that Defendants had knowledge that Conner would not purchase Read-Rite products *at the time* Yansouni made the March 2, 1996, statement. At most, the post-class-period statement is a later, sobering revelation. Such a revelation, however, does not turn Yansouni's earlier, cheerier statement into a falsehood. Accordingly, we hold that the district court correctly concluded that Plaintiffs did "not point to any specific evidence, such as contemporaneous reports or statements of others, in support of their allegations of scienter."

[7] Plaintiffs' reliance on *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72 (1st Cir. 2002), is misplaced. In *A.T. Cross*, the defendants' company financial statements, which admitted that the defendants knew from early 1999 that their key product was a significant drain on the company's resources, directly contradicted their public statements that product sales were a success. *Id.* at 79 ("From this, it may easily be inferred that the statements were misleading and that the defendants knew that they were misleading."). Here, however, Defendants did not make post-class-period statements that were contradictory or necessarily inconsistent with allegedly false public statements. Defendants' post-class-period statements may give rise to a reasonable inference that Read-Rite did not design its core-products according to the schedule that they publicly stated; however, the post-class-period statements do not amount to a "strong inference" that Defendants knowingly, or

IN RE READ-RITE CORP. 9019

with deliberate recklessness, made misleading statements to investors. "It is clearly insufficient for plaintiffs to say that a later, sobering revelation makes an earlier, cheerier statement a falsehood." *Yourish*, 191 F.3d at 997. Accordingly, the district court correctly dismissed Plaintiffs' complaint for failure to meet the PSLRA's heightened pleading requirement.[1]

Plaintiffs also rely upon *Epstein v. Iron, Inc.*, 993 F. Supp. 1314 (E.D. Wash. 1998), in which a district court held, "facts critical to a business's core operations or an important transaction generally are so apparent that their knowledge *may* be attributed to the company and its key officers." *Id.* at 1326 (emphasis added). Plaintiffs argue that Defendants' admissions, in conjunction with the importance of the Tripad II and III products to Read-Rite's sales during the Class Period, creates a strong inference of scienter sufficient to satisfy the *Silicon Graphics* standard. *Epstein*, however, predates *Silicon Graphics*, which clarified the requirement that a plaintiff must plead with particularity and which is the law of our circuit. The PSLRA plainly requires the plaintiff to plead "particular facts in the complaint" that "raise a 'strong inference' that

---

[1] Plaintiffs also rely on *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955 (C.D. Cal. 2000), to support their contention that Defendants' post-class-period statements constitute strong circumstantial evidence of reckless disregard. Their reliance is misplaced. There, the district court held that the form 10K, filed in August 1999, which disclosed that the contract with IBM to design and build the website was entered into in June 1999, clearly contradicted the defendants' statements in early 1999 regarding the "final development" of their website. As we have explained above, there is no such direct contradiction here. We also note that our recent decision in *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.*, 320 F.3d 920 (9th Cir. 2003), does not affect our analysis in this case. The facts asserted by the *America West* plaintiffs were far more compelling than those alleged here, which consist only of post-class-period admissions that are neither inconsistent with nor directly contradictory to the allegedly fraudulent statement made during the Class Period. The allegations set forth in this case do not meet the express heightened pleading standards set forth in *Silicon Graphics*, 183 F.3d 970, a standard to which we continue to adhere.

9020           IN RE READ-RITE CORP.

misleading statements were knowingly or deliberate recklessness made to investors . . . ." *Ronconi*, 253 F.3d at 429.

Here, the district court correctly concluded that Plaintiffs did not adequately allege specific, particularized facts that support a "strong inference" of scienter on the part of Defendants. Plaintiffs may have established a "reasonable inference" that, based upon their job duties at Read-Rite, Defendants Yansouni and Schwettmann "would be aware of the falsity of some or all of the statements" regarding the Tripad II and III products. The existence of a "reasonable inference," however, does not satisfy the PSLRA's requirement that Plaintiffs allege particular facts that give rise to a "strong inference" of scienter on the part of Defendants. Accordingly, the district court correctly dismissed Plaintiffs' complaint for failing to meet the PSLRA's heightened pleading standard.[2]

The judgment of the district court is

**AFFIRMED.**

---

[2]We do not reach Plaintiffs' remaining contentions, which are dependent on the viability of their action.